# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE L. ARDDS, <br><br> Plaintiff, <br><br> v. <br><br> D. HICKS, et al., <br><br> Defendants. | Case No. 1:18-cv-01324-LJO-BAM (PC) <br><br> SCREENING ORDER GRANTING PLAINTIFF LEAVE TO AMEND <br><br> (ECF No. 23) <br><br><br> **THIRTY-DAY DEADLINE** |

Plaintiff Antoine L. Ardds ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on September 21, 2018, and the matter was transferred to this Court on September 26, 2018. (ECF Nos. 1 and 3.) Plaintiff's first amended complaint, filed on December 11, 2018, is currently before the Court for screening. (ECF No. 23.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at California State Prison, Corcoran ("CSP-Corcoran"), where the events in the amended complaint are alleged to have occurred. Plaintiff brings this action for damages, along with declaratory and injunctive relief, against the following defendants: (1) Lieutenant J. Amaya; (2) Correctional Counselor D. Sanchez; (3) Officer J. Alcantar; (4) Officer J. McIntyre; (5) Officer D. Hicks; (6) Officer A. Baylon; and (7) Licensed Correctional Social Worker R. Severens. Plaintiff names defendants in their individual and official capacities.

<u>Allegations re Substantial Risk of Serious Harm</u>

On September 2, 2017, Plaintiff was housed in a CTC-Mental Health Crisis Bed at CSP-Corcoran due to Plaintiff's suicidal condition. On November 2, 2017, Defendants Severens and Sanchez were informed by Plaintiff of his fears of being set up by CSP-Corcoran-3B officials for being an active participant in several civil actions against CDCR officials. Plaintiff made several requests for a single cell due to an alleged history of CDCR officials staging in-cell assaults by cellmates.

1    On December 28, 2017, Defendants Severens and Sanchez were given Plaintiff's Inmate
2    Request for Interview CDCR 22 form requesting a single cell. Plaintiff informed both defendants
3    of the possible use of cellmates by CSP-Corcoran-3B officials as instruments of assault in
4    retaliation for filing civil actions and witnessing abuse of authority and discriminatory actions by
5    CSP-Corcoran officials against the 3-B Facility mental health population.

6    Plaintiff claims that due to the deliberate indifference of Defendants Severens and
7    Sanchez, Plaintiff was assaulted by his cell mate, Inmate T. Hall, on November 9, 2017. Plaintiff
8    sustained severe facial injuries from being struck from behind by Inmate Hall. Inmate Hall had a
9    previous, similar attack on another inmate with the same use of a state plastic cup as a weapon.

10    Plaintiff alleges that Defendants Amaya, Hicks and Sanchez ignored the substantial risk of
11   harm posed to Plaintiff even with personal knowledge of Plaintiff's history of in-cell and out-of-
12   cell assaults by cellmates. Plaintiff asserts that Defendant Hicks was in charge of inmate housing
13   assignments and that Inmate Hall was intentionally placed in Plaintiff's cell.

14    Plaintiff filed several grievances/appeals and inmate request for interview forms in which
15   he continued to complain or request single cell status due to his fears of being set up for assaults.

16    Defendants Severens, Sanchez and Hicks allegedly had previous knowledge of the
17   substantial risk of serious harm posed to Plaintiff through their access to his central files. Plaintiff
18   claims that they ignored departmental policies, procedure and requirements.

19    Defendant Sanchez reportedly stated her awareness of such a threat posed to Plaintiff in
20   Plaintiff's UCC Hearing and his CDCR 128(b) form dated November 2, 2017. Even with such
21   knowledge, Defendant Sanchez reportedly ignored the risk factors and failed to intervene to
22   safeguard Plaintiff.

23    Plaintiff contends that the due to the failure of all defendants to comply with the
24   Departmental Operations Manual, he was viciously assaulted on November 9, 2017, and suffered
25   severe injuries to the right side of his face, eye, lips and nose area from being struck with a state
26   cup from behind by Inmate Hall.

27    On November 27, 2017, Plaintiff filed his first appeal/grievance complaining of the failure
28   of Defendant Sanchez to honor his request for single cell placement. Plaintiff reports that he was

brought before Defendant Sanchez in an effort to threaten, intimidate and force Plaintiff to withdraw the grievance. On December 19, 2017, Plaintiff stated in his withdrawal that he would better address the issues in another appeal regarding the assault.

Allegations re Failure to Protect

Plaintiff alleges that on January 19, 2016, Kathleen Allison, CDCR Director, and Scott Kernan, CDCR Secretary, sent a memorandum to all CDCR Wardens and Associate Directors addressing inmate housing assignment considerations during the screening and housing process. The memorandum reiterated and clarified the obligation of Defendants Hicks, Alcantar, McIntyre, Baylon, Sanchez, Severens and Amaya to consider the vulnerabilities of inmates with mental and medical health conditions or severe developmental disabilities when determining whether to grant single cell status under the Departmental Operations Manual.

Plaintiff contends that he had demonstrated on several occasions through departmental evidence that he fit each set of criteria in the January 19, 2016 memorandum. Plaintiff claims that each of these factors was intentionally ignored by defendants due to their feelings about his commitment offense and his continued civil actions and staff complaints. Plaintiff further claims that they ignored the length of his sentence, his enemies and victimization history, his vulnerability due to medical or mental health and disabilities, history of in-cell assaults and/or violence, nature of commitment offense, history of "S" suffix determination, and security threat group affiliation and/or associate thereof. Plaintiff asserts that due to defendants' failure to comply or implement an assessment of these criteria, he was assaulted with a state plastic cup from behind by Inmate Hall on November 9, 2017. At the time of the attack, Plaintiff was in the medication line. Plaintiff asserts that the attack was unprovoked and that he had never met or had any words with Inmate Hall prior to that time.

Allegations re Use of Inmate Hall as an Instrument of Assault

Plaintiff alleges that on November 9, 2017, at approximately 8:00 p.m., he was assaulted by his cellmate, Inmate T. Hall. Inmate Hall came behind Plaintiff during medication call and struck him with a state plastic cup several times to his face, causing severe injuries to his right eye, nose and lips, which later required x-rays. Plaintiff claims that the attack was unprovoked

4

because Inmate Hall was just placed in his cell by Defendants Hicks, Sanchez, Alcantar, McIntyre and Amaya, who had prior knowledge of Inmate Hall's comments similar assaults and STG affiliation to the SNY 2-5ers. Plaintiff claims that these defendants knew that Inmate Hall posed a substantial risk of harm to Plaintiff due to his enemies on the yard and that he was looking for a way off the yard.

Plaintiff believes that Inmate Hall was placed in the cell of Inmate Massey after the purported assault and batter on Plaintiff. Due to Inmate Massey's complaints filed against unit staff in unit one, Inmate Hall assaulted Inmate Massey, who later paroled, with a state cup, causing severe injuries to his eye on November 17, 2017.

Plaintiff claims that on November 9, 2017, Defendants Alcantar and McIntyre were in position between the medication carts. Plaintiff asserts that both had a bird's eye view of the incident from beginning to end.

On December 19, 2017, Plaintiff requested that each officer state if he or she witnessed Inmate Hall strike him the face several times. Defendants Alacantar and McIntyre offered the use of a cup without being asked if such weapon was ever used. Plaintiff alleges that Defendants Alcantar, McIntyre, Hicks and Amaya conspired with each other in using Inmate Hall as their instrument to carry out the assault of Plaintiff on November 9, 2017, by intentionally placing Inmate Hall in Plaintiff's cell in retaliation for his participation in civil acts and staff complaints against CDCR officials. Plaintiff further alleges that each defendant had access to the department's computer in which to evaluate housing criteria and Defendant Amaya and Hicks were assigned to housing inmates.

Exhaustion of Administrative Remedies

On January 3, 2018, Plaintiff filed his second grievance/appeal addressing the November 9, 2017 failure to protect against the assault by Inmate Hall. Plaintiff claims that defendants and their agents delayed and obstructed the process, making administrative remedies unavailable. Plaintiff also claims that defendants retaliated against him in his efforts to resolve the matter through proper investigation or evidentiary corroboration of his requested witnesses during his disciplinary hearing on the charge of fighting.

5

On March 5, 2018, Plaintiff received his grievance back, but it was not in its original form. Plaintiff avers that defendants attempted to manipulate the appeals process until Plaintiff refiled his complaint on March 7, 2018, as instructed by Inmate Appeals Coordinator T. Galaviz.

On December 28, 2017, Plaintiff submitted his CDCR Inmate Request for Interview Form to Defendants Sanchez and Severens regarding their failure to honor his single cell request and to document his complaint of the November 9, 2017 assault and battery.

On January 4, 2018, Plaintiff submitted an Inmate Request for Interview CDCR 22 Form to Defendant Severens informing him of Plaintiff's fears of cellmate assaults and retaliation from CSP-Corcoran officials. Defendant Severens attempted to mislead Plaintiff regarding the criteria for single cell status, referencing a reportedly non-existent memorandum from September 2011. Defendant failed to offer such document upon request.

On March 29, 2018, in retaliation for Plaintiff filing the above complaints (and the February 17, 2018 assault and batter and possible death of Inmate D. Cole by several prison officials), Plaintiff's complaint/letters to the Office of Internal Affairs were intercepted by prison officials on February 22, 2018.

Defendants Sanchez, Hicks, Alcantar, McIntyre, Severens, Amaya and Baylon attempted to remove Plaintiff from the Enhanced Outpatient Housing Unit, his assigned level of care, into a general population unit that was not his assigned or designated mental health care level.

<u>Failure to Protect and Deliberate Indifference – March 29, 2018</u>

On March 29, 2018, Plaintiff gave notice to Correctional Officer M. Riley of his need to speak with his clinician regarding his suicidal ideation at approximately 1:15 p.m. This notice was ignored by Defendants Severens, who was assigned to Plaintiff.

At approximately 1:57 p.m., Inmate Moore informed Defendants Alcantar and McIntyre of Plaintiff slicing and cutting his throat and neck in a suicide attempt. Inmate Moore, who was Plaintiff's next-door neighbor, overheard his requests and statements of using a razor due to feeling suicidal.

Defendant Alcantar responded and handcuffed Plaintiff, seating him at the middle "B" section dayroom table to be evaluated by medical first responders. Plaintiff was escorted by

Correctional Officer Billings, who was assigned to sit on him during his mental and medical evaluation by an LVN, RN and Chief Psychiatrist Ducci.

Chief Psychiatrist Ducci made a call to Defendant Amaya at approximately 4:35 p.m. requesting that on Plaintiff's return, he be secured in a single cell. Defendant Amaya agreed. While awaiting further evaluation, Officer Billings conducted a computer check to ensure that Plaintiff would return to the agreed upon single cell placement. At 4:45 p.m., Officer Billings confirmed that Plaintiff should return to his assigned cell as a single cell.

On March 29, 2018, at approximately 4:48 p.m., Plaintiff was released from CTC and escorted by Officer Billings back to his assigned cell. Upon Plaintiff and Officer Billings entering the unit, they were informed by Defendants Alcantar and McIntyre that Plaintiff would be reassigned to a CCCMS unit. Plaintiff was supposed to remain housed in a designated E.O.P. unit. Officer Billings escorted Plaintiff to his newly assigned cell, which was unoccupied. As Plaintiff entered, he and Officer Billings noticed that Defendants Baylon and another officer were walking Inmate Robertson towards Plaintiff's cell.

Plaintiff believes that Inmate Robertson also was an STG affiliated inmate who Defendants Hicks, Alcantar, McIntyre, Amaya, Sanchez, Baylon and Severens knew had requested Administrative Segregation due to his safety concerns regarding other STG affiliated groups finding out that he was not of their Independent Riders Gang. Plaintiff also believes that Inmate Robertson was given instructions by Defendants Hicks, Amaya, Alcantar, McIntyre and Baylon that if he assaulted Plaintiff, then he could be removed from the substantial risk of harm he faced from his enemies.

Plaintiff informed Defendants Hicks, Amaya and Baylon that he felt suicidal and unsafe to be housed with anyone. Defendant Amaya, Baylon and Hicks refused to acknowledge Plaintiff's request for a mental health suicide watch placement. Due to the continued threats of harm and the intimidation by Defendants Hicks, Amaya and Baylon, Plaintiff was forced to agree to return to his unit. Upon Plaintiff's return, he observed that Inmate Robertson was already in the cell and had placed items within the door frame to prevent custody from opening the cell door. Defendant Baylon stated that he would force Plaintiff into the cell. Plaintiff was still cuffed, but Inmate

Robertson was not.

Inmate Robertson placed two razors on the tray slot, pointing at them for Plaintiff to see. Inmate Robertson further stated to Defendant Baylon that Plaintiff would not be coming into the cell and displayed a prison knife/shank. Plaintiff was placed into the shower while the assigned third watch sergeant attempted to manipulate the situation with Inmate Robertson. One of the officials who observed this informed the third watch commander and Psychiatrist Ducci that Plaintiff was placed in the wrong mental health treatment unit. Plaintiff was later reassigned to original housing unit. Upon being reassigned, Plaintiff informed Defendants Alcantar and McIntyre of his suicidal ideations, because he was feeling stressed out, unsafe and depressed. Defendants continued to ignore Plaintiff's mental health concerns.

Upon information and belief, Psychiatrist Ducci sent both Dr. Hurt and Dr. Chong to remove Plaintiff from the unsafe environment. Plaintiff informed them of his suicidal ideation. Dr. Hurt and Dr. Chong then instructed Defendants Alcantar and McIntyre to place Plaintiff in the shower. He was later escorted to CTC-MHCB. Plaintiff believes defendants retaliated against these psychiatrists for assisting and reporting the abuse of authority that they witnessed. Plaintiff claims that Defendant D. Hicks has used and abused his position as the union representative to harass, intimidate, and threaten other employees and inmates who complaint against him or others.

Retaliation by Defendant Hicks

Plaintiff alleges that Defendants Hicks, Baylon and Alcantar have acted with deliberate indifference to substantial risk of serious harm to Plaintiff and other mentally disabled patients/inmates in violation of their rights under the Americans with Disabilities Act, the Rehabilitation Act and the Eighth Amendment. Plaintiff believes that Defendant Hicks has a past history of similar abuse against inmates housed at CSP-Corcoran.

Plaintiff contends that in September 2014, there was civil complaint accusing Defendant Hicks of similar abuse of authority, with an intent to incite/provoke violence using abusive and improper language. Plaintiff cites *Lerenzo Darnell Hutson v. D. Hicks, et al.*, 1:15-cv-01505-AWI-SAB (PC). In July 2013, a videotaped interview was conducted by Defendant Hicks

relating to the use of excessive force. Plaintiff contends that Defendant Hicks conspired to transfer the plaintiff in *Millner v. Biter* to avoid liability by DVSP prison officials. Plaintiff again cites *Hutson v. Hicks*, along with *James W. Miller v. Martin Biter, et al.*, 1:13-cv-02029-AWI-SAB. Plaintiff further alleges that a number of events have continued to occur with Plaintiff and other mentally disabled inmates that should have raised concerns about CSP-Corcoran 3B Unit and to officials continuing to engage in a custom and pattern of using other prisoners as the instruments of their assaults upon CSP-COR-3B-EOP population in retaliation for filing complaint or being unable to complain at all due to rears of intimidation and threats. Plaintiff claims there is a substantial threat of irreparable harm to Plaintiff and CSP-COR-EOP population if his injunction is not granted.

Plaintiff also alleges that Defendants Hicks, Baylon and Alcantar continue to attempt to incite and provoke other inmates to assault Plaintiff by releasing confidential C-File information to them. Plaintiff alleges that the acts and omissions of Defendants Hicks Sanchez and Amaya (or their subordinates; failure to act) amount to the deprivation of Plaintiff's right to reasonable protection from assault, harassment, intimidation or threats as provided by the Eighth Amendment and the Bane Act, California Civil Code 52.1. Plaintiff further alleges that Defendants Hicks, Sanchez, Alcantar, McIntyre, Baylon, Amaya and Severens have demonstrated their intentional failure to report all misconduct or unnecessary use of force by other guards. Plaintiff contends that Defendants Hick, the 3B-Facility union representative, has abused his authority and position against staff employees and inmates through harassment, intimidation and treats, creating a substantial risk of harm to inmates and other prison officials who report his misconduct.

Causes of Action

In his first cause of action, Plaintiff asserts that Defendants Amaya, Alcantar, McIntyre, Baylon, Sanchez, Severens and Hicks were deliberately indifferent to a substantial risk of inmate-on-inmate assaults and have deprived Plaintiff and other mentally disabled inmates of their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

In his second cause of action, Plaintiff alleges that Defendants Amaya, Severens, and

Sanchez failed to intervene in the ongoing placement of assaultive cellmates into Plaintiff's cell, even after their acknowledgement of Inmate Hall's prior STG affiliation and similar acts of violence upon cell mates with a state cup. Plaintiff claims that this amounts to deliberate indifference to safety in violation of the Due of Process Clause of the Fourteenth Amendment and the Eighth Amendment.

In his third cause of action, Plaintiff claims Defendants Hicks, Amaya, Alcantar, McIntyre, Sanchez, Baylon and Severens were deliberately indifferent to his serious mental health needs. On March 29, 2019, Defendants allegedly deprived Plaintiff of his rights under the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

In his fourth cause of action, Plaintiff alleges that the failure of defendants to act on their knowledge of a substantial risk of serious harm to Plaintiff and other prisoners violated Plaintiff's Eighth Amendment right to be free from deliberate indifference to his personal safety. As a result of Defendants' failure to protect him from a foreseeable attack, Plaintiff suffered an eye, nose and lip injury from the November 9, 2017 assault.

In his fifth cause of action, Plaintiff alleges that the refusal of Defendants Hicks, Alcantar, McIntyre, Amaya and Baylon to provide him with mental health treatment or notify appropriate mental or medical personnel of suicidal ideation constituted deliberate indifference to his health and safety and deprived him of his rights under the Due Process Clause of the Fourteenth Amendment and deliberate indifference to his mental health needs in violation of the Eighth Amendment. Plaintiff further alleges that Defendants Amaya, Severens, Alcantar, McIntyre, Baylon and Hicks have created a policy, procedure and custom of restricting and punishment mentally disabled inmates for requesting assistance in suicide prevention. The refusal of defendants to provide protection or medical and mental health assistance to Plaintiff reportedly resulted from Plaintiff's filing of grievances and civil actions against defendants in previous district cases. Plaintiff claims this constitutes retaliation in violation of the First Amendment. Plaintiff further claims that as a result of defendants' failures, he was viciously assaulted on November 9, 2017, and there was an attempted assault by Inmate Robertson on March 29, 2018,

incited and provoked by Defendants Hicks, Amaya, Alcantar, Severens, Sanchez, McIntyre and Baylon. Defendants allegedly breached their duty by failing to provide protection to Plaintiff after he provided several notices through CDCR forms and grievances and psychiatrist, psychologist and other CDCR investigative units informing them of such threats and fears. The breach resulted in serious mental and physical injuries to Plaintiff.

Requested Relief

As relief, Plaintiff seeks a declaratory judgment, injunctive relief and monetary damages.

**III. Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20. As Plaintiff is proceeding pro se, he will be given an opportunity to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith. To assist Plaintiff, the Court provides the relevant pleading and legal standards that appear applicable to his claims.

**A. Pleading Standards**

  1. Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–57; Moss, 572 F.3d at 969.

Plaintiff's complaint is not a short or plain statement of his claims. The complaint is repetitive, disorganized and contains allegations regarding events involving other inmates and staff members unrelated to Plaintiff's claims. Plaintiff's complaint also does not include a clear chronology of events. In any amended complaint, Plaintiff must clearly state what happened, when it happened and who was involved.

  2. Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise unrelated claims against different defendants in a single action Joining multiple defendants in one complaint is proper only if the claims against them are based on the same facts.

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, (1978); Rizzo v. Goode, 423 U.S. 362, (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

Throughout the complaint, Plaintiff repeatedly lumps all defendants together in his allegations, making it difficult for the Court to draw the necessary connection between each defendant's actions or omissions and the alleged denial of Plaintiff's constitutional rights. In any amended complaint, Plaintiff must properly link each individual defendant to an alleged

deprivation of his constitutional rights.

### 4. Claims of Other Inmates or Staff Members

Insofar as Plaintiff is attempting to assert claims on behalf of other inmates or staff members regarding alleged wrongs by the named defendants, he may not do so. Plaintiff may only represent his own legal interests; he may not represent the legal interests of other inmates or other individuals. "A litigant appearing in propria persona has no authority to represent anyone other than himself" in a civil rights action. Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir. 1981) ("[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (Citations omitted.)). "Although a non-attorney may appear *in propria persona* in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." C.E. Pope Equity Trust v. U.S., 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted).

**B.     Legal Standards**

### 1. First Amendment - Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F. 2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff alleges that Defendants' actions in allegedly setting him up for assault on two occasions, failing to provide him with appropriate mental health treatment and confiscating

his outgoing mail were based on retaliation for civil actions and grievances. Plaintiff's allegations are conclusory, and the Court cannot determine the sequence of events alleged in the complaint or whether Defendants' asserted actions (or inaction) were because of any protected conduct by Plaintiff. There is no indication in the complaint that any of the defendants knew of Plaintiff's civil actions or grievances before acting on Plaintiff's housing assignment, cell assignments or mental health treatment. In any amended complaint, Plaintiff must clearly and succinctly allege what happened, when it happened and who was involved.

### 2. First Amendment – Interference with Outgoing Mail

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'" Nordstrom v. Ryan, 856 F.3d 1265, 1272 (9th Cir. 2017) (quoting Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam)). However, a temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights. See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); see Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990 Watkins v. Curry, 2011 WL 5079532, at *4 (N.D. Cal. Oct. 25, 2011) (finding that an isolated incident of mail mishandling, without evidence that the delay was based on the content of the letter or that the one-year delay was purposeful, fails to show First Amendment violation).

Plaintiff's allegations regarding interception of his mail are confusing and illogical. He asserts that the alleged confiscation of his mail occurred on both March 19, 2018 and February 22, 2018, but the alleged confiscation appears to relate to the same piece(s) of mail. Further, Plaintiff fails to attribute the confiscation of his mail to any of the named defendants in this action. In any amended complaint, Plaintiff must clearly state what happened, when it happened and who was involved in the alleged confiscation of his outgoing mail. Plaintiff is cautioned that if this claim is not properly joined, it will not be permitted to proceed in this action.

### 3. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual

14

punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010), overruled in part by Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (en banc); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

At the pleading stage, the Court finds that Plaintiff has stated a cognizable claim for deliberate indifference to serious medical needs against Defendant Severens based on Plaintiff's attempted suicide on March 29, 2018. However, as discussed above, this claim does not appear to be properly joined with claims against other defendants named in this action involving different events. Further, Plaintiff's other assertions of deliberate indifference to serious medical needs do not rise to the level of an Eighth Amendment violation. There is no indication that Plaintiff suffered any harm from other alleged action/inaction by any of the defendants, such as the alleged failure to assign Plaintiff to the proper housing unit after his alleged suicide attempt.

4. Eighth Amendment – Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34; Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the

Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

In this instance, Plaintiff alleges that certain defendants failed to protect him from assault by Inmate Hall on November 9, 2017. Plaintiff's complaint fails to state a cognizable claim for failure to protect under the Eighth Amendment. There is no indication that any defendants were aware of a risk of assault to Plaintiff while he was waiting in the medication line. The incident reportedly occurred before Inmate Hall was placed in Plaintiff's cell and before Plaintiff even met Inmate Hall. Based on this information, the Court cannot conclude that prison officials knew of a risk of harm and failed to protect Plaintiff. Plaintiff's reported complaints of a generalized risk of assault are not sufficient.

Plaintiff also appears to allege that certain defendants failed to protect him from Inmate Robertson. Yet, according to Plaintiff's allegations, Inmate Robertson did not harm, injure or otherwise assault Plaintiff. Further, there is no indication that Plaintiff was ever placed in the same cell with Inmate Robertson and he was not subjected to any assault or attack. Plaintiff's complaint therefore fails to state a cognizable claim.

5. Fourteenth Amendment – Due Process and Equal Protection

The nature of Plaintiff's Due Process and Equal Protection claims is unclear. Insofar as Plaintiff's Due Process claim is based on the processing and resolution of his appeals/grievances, Plaintiff's complaint fails to state a cognizable claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a have protected liberty interest in the processing of his appeals/grievances, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

To the extent Plaintiff is pursuing an Equal Protection claim based on his status as a

16

mental health patient, Plaintiff's complaint also fails to state a cognizable claim. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601–02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

Plaintiff has not shown that he was discriminated against because of his membership in any protected class. Nor has Plaintiff shown that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Plaintiff's conclusory statements about discrimination do not suffice. Therefore, he has not stated any claim for a violation of his Fourteenth Amendment rights.

      6.     Americans with Disabilities Act ("ADA")/Rehabilitation Act ("RA")

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of L.A., 250 F.3d 668, 691 (9th Cir. 2001).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Simmons, 609 F.3d

at 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004). While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." Zukle v. Regents of the Univ. of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

To the extent plaintiff intends to sue the individual named defendants for violation of his rights under the ADA, they are not proper defendants in this action. The proper defendant in ADA actions is the public entity responsible for the alleged discrimination. U.S. v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. Yeskey, 524 U.S. at 210; Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997) (ADA and RA apply to inmates in the state correctional system).

In order to state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." Armstrong, 124 F.3d at 1023. Plaintiff has alleged no facts demonstrating such exclusion or denial. While Plaintiff alleges Plaintiff is mentally ill, he does not allege his illness led to an exclusion or denial of a prison service, program, or activity. Further, plaintiff's allegations of inadequate medical care do not state a claim under the ADA. Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); see also Simmons, 609 F.3d at 1022 (stating that inadequate or negligent medical treatment alone does not constitute an unlawful failure to accommodate under the ADA).

7. Declaratory Relief

Plaintiff's complaint seeks a declaratory judgment. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353,

1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a complaint form;

2.     Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

///

///

///

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **October 30, 2019**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE