# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE L. ARDDS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>D. HICKS, et al.,<br><br>　　　　　Defendants. | Case No. 1:18-cv-01324-NONE-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DENIAL OF *EX PARTE* MOTION FOR RELIEF AS MOOT<br><br>(ECF No. 32)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Antoine L. Ardds ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on September 21, 2018, and the matter was transferred to this Court on September 26, 2018. (ECF Nos. 1 and 3.) Plaintiff filed a first amended complaint on December 11, 2018. (ECF No. 23.) On October 31, 2019, the Court screened Plaintiff's first amended complaint and granted him leave to amend. (ECF No. 29.) Plaintiff filed a second amended complaint on December 5, 2019, along with an *ex parte* motion seeking an order directing the provision of his legal property. (ECF No. 32.) Plaintiff's second amended complaint is currently before the Court for screening.

**I.　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a

1

governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.   Plaintiff's Allegations**

Plaintiff is currently housed at the California State Prison, Corcoran ("CSP-Corcoran") where the events in the amended complaint are alleged to have occurred. Plaintiff brings this action for damages and injunctive relief against the following defendants: (1) Correctional Counselor II D. Sanchez; (2) Officer D. Hicks; (3) Officer A. Baylon; (4) Officer J. Alcantar; (5) Officer J. MycIntyre; (6) Lieutenant J. Amaya; and (7) Correctional Licensed Social Worker R. Severens. Plaintiff names defendants in their individual and official capacities.

Allegations re Substantial Risk of Serious Harm

On September 2, 2017, Plaintiff arrived from the Richard J. Donovan Correctional Facility and was housed in a CTC-Mental Health Crisis Bed at CSP-Corcoran after experiencing a severe claustrophobic reaction. In October 2017, Plaintiff was rehoused in CSP-Corcoran's 3B-Facility.

Plaintiff alleges that he became a target of reprisals because of his participation in several staff complaints and in litigation against officials of the California Department of Corrections and Rehabilitation ("CDCR"). He was continuously scheduled for RVRs and appeal grievance interviews with prior institutions. Plaintiff believes that e-mails and phone calls to Defendants Hicks, Sanchez and Amaya prompted them to flag Plaintiff as an inmate who likes to write up and sue staff. Plaintiff also believes that this prompted their sudden harassment, intimidation, threats and use of other persons as an instrument of attacks and assaults. Plaintiff contends that this led to the November 9, 2017 vicious assault by Plaintiff's cellmate, who struck Plaintiff in the face, causing severe injuries to his right eye, nose and lips after being hit from behind with a state cup. Plaintiff further believes that this information prompted Defendants Hicks and Amaya to instigate other inmates by starting rumors regarding Plaintiff's commitment offence with the office porters. Plaintiff asserts that these defendants were aware that such an act would more than likely incite other prisoners to attack and assault Plaintiff, which occurred on November 9, when he was attacked and assaulted by his cellmate.

On or about October 30, 2017, Defendants Hicks and Amaya informed Defendants Alcantar and MycIntyre that Plaintiff liked to sue and write up officers and to check out his c-file. This allegedly prompted Defendants Alcantar and MycIntyre to display Plaintiff's confidential, privileged information to the unit porters from the unit computer. Plaintiff claims this was done to incite other prisoners to attack and assault Plaintiff because defendants intended to punish him for his crime and silence his complaints against CDCR officials.

On October 31, 2017, Defendants Hicks and Amaya were designated for housing and cell assignment on CSP-Corcoran's 3B- Facility. Defendants were aware of the substantial risk of harm posed to Plaintiff by assigning a prior assaultive inmate into his cell. Defendants Hicks and Amaya informed Defendants Alcantar and MycIntyre that they were reassigning Inmate T. Hall to Plaintiff's cell even though they were aware of 15 unoccupied cells in 3B02.

On October 31, 2017, Plaintiff was informed by Defendants Alcantar and MycIntyre to expect a cellmate soon. Plaintiff informed Defendants Alcantar and MycIntyre that a cellmate would pose a threat to Plaintiff's safety, displaying his CDCR documents, appeals and court

documents of complaints against staged assaults. Defendants stated that Plaintiff could either accept his cellmate or be written up and still forced to accept his cellmate. Plaintiff continued to address the matter, but he was told to take it up with his cellmate when he arrived.

Defendant Baylon escorted Inmate Hall into Plaintiff's cell. Defendant Baylon reportedly instigated this inmate to assault Plaintiff by releasing Plaintiff's confidential privileged information to him during their walk over to the unit.

<u>Substantial Risk of Harm</u>

On November 2, 2017, Defendants Severens and Sanchez were informed by Plaintiff of his fears of being set up by CSP-Corcoran-3B officials for being an active participant in several civil actions against CDCR officials. Between October 2017 and November 9, 2017, Plaintiff made several requests to each defendant for a single cell placement due to his history of CDCR officials staging in cell assaults by cellmates. Defendant Sanchez acknowledged her awareness of such a threat posed to Plaintiff in his U.C.C. hearing and in his CDCR 128(b) chrono dated November 2, 2017. Despite this knowledge, Defendant Sanchez ignored the risk factors and failed to intervene to safeguard Plaintiff.

Plaintiff claims that due to the deliberate indifference of Defendants Severens and Sanchez, Plaintiff was assaulted by his cellmate, Inmate T. Hall, on November 9, 2017. Plaintiff sustained severe facial injuries from being struck from behind with a plastic cup. Inmate Hall had a previous, similar attack on another inmate using a plastic cup.

Plaintiff alleges that Defendants Sanchez, Severens, Hicks, Alcantar, MycIntyre, Amaya and Baylon were aware of Inmate Hall's previous similar assaults on cellmates with state cups. Plaintiff asserts that Defendant Hicks and Amaya were in charge of inmate housing assignments and intentionally placed Inmate Hall in Plaintiff's cell in retaliation for maintaining litigation against several CDCR officials and Plaintiff's commitment offense.

<u>Allegations re Failure to Protect</u>

Plaintiff alleges that on January 19, 2016, the CDCR Director and Secretary sent a memorandum to all CDCR Wardens and Associate Directors addressing inmate housing assignment considerations during the screening and housing process. On or about October 2017

through November 9, 2017, Plaintiff supplied each defendant with a copy of this memorandum to reiterate their obligations to consider the vulnerabilities of inmates with mental and medical health conditions or severe developmental disabilities when determining whether to grant single cell status under the Departmental Operational Manual.

Plaintiff contends that he had demonstrated on several occasions through departmental evidence that he fit each set of criteria in the January 19, 2016 memorandum. Plaintiff claims that each of these factors was intentionally ignored by Defendants Hicks, Alcantar, Sanchez, Severens, Amaya, Baylon and MycIntyre due to their feelings about his commitment offense and his participation in civil suits and staff complaints against CDCR officials. Plaintiff further alleges that defendants ignored the length of his sentence, his enemies and victimization history, his vulnerability due to medical or mental health and disabilities, history of in-cell assaults and/or violence, nature of commitment offense, "R" or "S" suffix determination, and designated protective custody. Plaintiff asserts that due to defendants' failure to comply or implement an assessment of these criteria, he was assaulted with a state plastic cup from behind by Inmate Hall on November 9, 2017. At the time of the attack, Plaintiff was in the medication line, the attack was unprovoked, and he had never met or had any words with Inmate Hall prior to the cell assignment and November 9 assault.

<u>Allegations re Use of Inmate Hall as an Instrument of Assault</u>

Plaintiff alleges that on November 9, 2017, at approximately 8:00 p.m., he was assaulted by his cellmate, Inmate T. Hall. Inmate Hall came behind Plaintiff during medication call and struck him with a state plastic cup several times to his face, causing severe injuries to his right eye, nose and lips, which later required x-rays. Plaintiff claims that the attack was unprovoked because Inmate Hall was just paced in his cell by Defendants Hicks, Sanchez, Alcantar, MycIntyre and Amaya, who had prior knowledge of Inmate Hall's similar assaults and STG affiliation to the SNY 2-5ers.

Plaintiff claims that on November 9, 2017, Defendants Alcantar and MycIntyre were in position between the medication carts. Plaintiff asserts that both had a bird's eye view of the incident from beginning to end.

On December 19, 2017, Plaintiff requested that his inmate and staff witnesses be called. The Senior Hearing Officer was given questions to be asked, including if the witnesses saw Inmate Hall strike Plaintiff in his face several times. Defendants Alcantar and MycIntyre offered Inmate Hall's use of the cup, without ever being asked.

Plaintiff alleges that between October 30, 2017 through November 9, 2017, Defendants Amaya, MycIntyre and Hicks conspired to use Inmate Hall as their instrument to carry out the assault on Plaintiff by intentionally placing Inmate Hall in his cell in retaliation for his exercise of protected conduct. Each of these defendants reportedly had access to the department's computer to evaluate Plaintiff's housing, cell and safety criteria.

Exhaustion of Administrative Remedies

On November 27, Plaintiff filed his first appeal/grievance complaining about the failure of Defendant Sanchez to honor Plaintiff's single cell placement request. On December 19, 2017, Plaintiff was brought before Defendant Sanchez for his appeal/grievance hearing. Plaintiff informed Defendant Sanchez that it was conflict of interest and Plaintiff was threatened with reprisal. Plaintiff contends that this was intended to intimidate him and force him to withdraw the grievance. Upon being forced to withdraw his appeal, Plaintiff stated that he would better address the issues about the November 9, 2017, in another appeal.

On December 28, 2017, Defendants Sanchez and Severens were given an Inmate Request for Interview CDCR Form 22 requesting single cell placement. Plaintiff informed both defendants of the possible use of cellmates as instruments of assault in retaliation for filing civil actions.

On January 3, 2018, Plaintiff filed his second grievance/appeal addressing the failure to protect against the assault by Inmate Hall. Plaintiff alleges that Defendants Hicks, Amaya and Sanchez and their agents delayed and obstructed the process, making administrative remedies unavailable. Plaintiff also alleges that defendants retaliated against him in his efforts to resolve the matter through proper investigation or evidentiary corroboration of his requested witnesses during his disciplinary hearing on the charge of fighting.

On January 4, 2018, Plaintiff submitted an Inmate Request for Interview CDCR 22 Form

to Defendant Severens informing him of Plaintiff's fears of cellmate assaults and retaliation from CSP-Corcoran officials. Defendant Severens attempted to mislead Plaintiff regarding the criteria for single cell status, referencing a reportedly non-existent memorandum from September 2011. Defendant failed to offer such document upon request.

On March 5, 2018, Plaintiff received his grievance back, but it was not in its original form. Plaintiff avers that Defendants Hicks, Sanchez and Amaya attempted to manipulate the appeals process until Plaintiff refiled his complaint on March 7, 2018, as instructed.

<u>Disability Accommodations & Deliberate Indifference</u>

On March 29, 2018, in retaliation for Plaintiff filing the above complaints (and bringing attention to the February 17, 2018 assault and battery and possible death of Inmate D. Cole by several prison officials), Plaintiff's complaint/letters to the Office of Internal Affairs were intercepted by prison officials on February 22, 2018.

Defendants Sanchez, Hicks, Alcantar, MycIntyre, Severens, Amaya and Baylon attempted to remove Plaintiff from the Enhanced Outpatient Housing Unit into a general population unit that was not his assigned or designated mental health care level.

On March 29, 2018, Plaintiff gave notice to the floor officer of his need to speak with his clinician, Defendants Severens, regarding Plaintiff's suicidal ideation at approximately 1:15 p.m.

At approximately 1:57 p.m., Plaintiff's neighbor overheard Plaintiff's request and statement of using a razor due to feeling suicidal. This inmate informed Defendants Alcantar and MycIntyre of Plaintiff slicing and cutting his throat and neck in a suicide attempt.

Defendant Alcantar responded and handcuffed Plaintiff, seating him at the middle "B" section dayroom table to be evaluated by medical first responders. Plaintiff was later escorted by a designated security escort to sit on him during his mental and medical evaluation by an LVN, RN and Chief Psychiatrist.

At approximately 4:35 p.m., the chief psychiatrist made a call to Defendant Amaya requesting that Plaintiff be placed on single cell status when he returned. Defendant Amaya agreed. While awaiting further evaluation, Plaintiff's security escort officer conducted a check to ensure that Plaintiff would be returning to his assigned cell as a single cell placement. At 4:45

1    p.m., this officer confirmed that Plaintiff should return to his assigned cell as a single cell.

2    On March 29, 2018, at approximately 4:48 p.m., Plaintiff was released back to his
3    assigned unit and cell. Upon huis return to the unit, Defendants Alcantar and MycIntyre informed
4    Plaintiff that he had been reassigned to a CCCMS and general population housing unit., not his
5    designated EOP mental health level of care unit. Plaintiff was escorted to his newly assigned cell,
6    which was unoccupied. As Plaintiff entered, Defendants Baylon and another officer were
7    walking another handcuffed inmate toward Plaintiff's cell.

8    Plaintiff kneeled in front of the cell and informed Defendant Baylon that he felt suicidal
9    and unsafe to be housed with anyone. He was handcuffed and taken outside in front of the
10   program office where he was threatened and refused a suicidal assessment/evaluation.
11   Defendants Amaya, Baylon and Hicks refused to acknowledge Plaintiff's request for a mental
12   health suicide watch placement. Due to the continued threats of harm and the intimidation by
13   Defendants Hicks, Amaya and Baylon, Plaintiff was forced to agree to return to the unit. Upon
14   Plaintiff's return, he observed that the other inmate was already in the cell and had the cell door
15   shut to prevent custody from opening it. Defendant Baylon stated that he would force Plaintiff
16   into the cell. Plaintiff was still cuffed, but the other inmate was not.

17   Once the tray slot was open, the other inmate placed two razors on the tray slot, pointing
18   at them for Plaintiff to see. The inmate stated to Defendant Baylon that Plaintiff would not be
19   coming into the cell and displayed a prison knife/shank. Plaintiff was placed into the shower
20   while the assigned third watch sergeant attempted to manipulate the situation with the other
21   inmate.

22   The escorting officer notified the Chief Psychiatrist, who informed the watch commander
23   that Plaintiff was being forced to house in the inappropriate mental health treatment unit.
24   Plaintiff was later reassigned to original housing unit. Upon being reassigned, Plaintiff informed
25   Defendants Alcantar and MycIntyre of his suicidal ideations, because he was feeling stressed out
26   and depressed. Defendants continued to ignore Plaintiff's mental health concerns.

27   Plaintiff is informed that the psychiatrist sent subordinate psychologists or psychiatrists to
28   remove Plaintiff from the unsafe environment. Plaintiff informed them of his suicidal ideation.

They then instructed Defendants Alcantar and MycIntyre to place Plaintiff in the shower.  He was later escorted to CTC-MHCB (crisis bed).  Plaintiff alleges that the removal from his designated EOP treatment program was a conspired effort between Defendants Hicks, Alcantar, Baylon, MycIntyre, Sanchez and Amaya to silence his complaint to Internal Affairs officials.

<u>Equal Protection</u>

Plaintiff alleges that Defendants Hicks, Baylon, Alcantar, Sanchez, Amaya, Severens and MycIntyre engaged in act of discrimination against him based on his mental disabilities and his commitment offense.  Between October 30, 2017 and March 29, 2018, Plaintiff alleges that Defendants Hicks, Baylon, Amaya, Alcantar and MycIntyre attempted to instigate, incite or provoke other mentally disabled inmates to attack and assault Plaintiff by releasing confidential privileged C-file information to them.

Plaintiff further alleges that a number of events continued to occur with Plaintiff and other mentally disabled inmates that should have raised concerns about CSP-Corcoran's 3B-2 and 3B-01 units.  Plaintiff claims that Defendants continued to engage in custom and pattern of using other prisoners as the instrument of their assaults upon Plaintiff in retaliation for filing complaints and advocating for those inmates who are incompetent to address their own issues.

Plaintiff alleges that Defendants Hicks, Sanchez, Alcantar, Amaya, MycIntyre, and Baylon failed to act upon or protect against the substantial risk of harm posed to plaintiff from October 2017 through November 9, 2017, when he was assaulted by his cellmate.  Plaintiff contends that this amounts to the deprivation of his right to reasonable protect on assault and attacks from other people in prison, harassment, threats or intimidation.  Plaintiff believes that each defendant had a duty under the Eighth Amendment to protect prisoners from violence at the hand of other prisoners.

<u>Requested Relief</u>

As relief, Plaintiff seeks compensatory and punitive damages.

**III.    Discussion**

    **A. Official Capacity**

Plaintiff is attempting to sue Defendants Sanchez, Hicks, Baylon, Alcantar, MycIntyre,

9

Amaya and Severens for monetary damages in their official and individual capacities.

"Suits against state officials in their official capacity ... should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991); Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is *not* a suit against the official personally, for the real party in interest is the entity." Id. at 166 (emphasis in original).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Therefore, Plaintiff's claim for monetary damages against each of the named defendants in their official capacity is barred by the Eleventh Amendment.

### B.     First Amendment - Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F. 2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

At the pleading stage, the Court finds that Plaintiff states a cognizable claim for retaliation against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon and Sanchez in their individual capacities arising from allegations that defendants set him up for assault on November 9, 2017.

Plaintiff also states a cognizable claim for retaliation against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon, Sanchez and Severens based on their attempt to improperly assign Plaintiff outside of his designated EOP mental health level of care unit and place him in an occupied cell after a direction that he receive a single cell placement.

### C.   Eighth Amendment – Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34; Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

At the pleading stage, the Court finds that Plaintiff has stated a cognizable claim against Defendants Sanchez, Hicks, Baylon, Alcantar, MycIntyre, and Amaya in their individual capacities for their failure to protect him from assault by Inmate Hall on November 9, 2017. Plaintiff does not state a cognizable claim against Defendant Severens arising out of the allegations involving Inmate Hall.  There is no allegation that Defendant Severens knew of a serious risk of harm from this specific inmate.

### D.  Single Cell Status

Insofar as Plaintiff complains that he originally should have assigned single cell status, there is no fundamental right in placement in a single or two-person prison cell. A prisoner does not have a constitutional right to be housed in a single cell. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (holding that double-celling does not violate Eighth Amendment when it does not involve conditions amounting to unnecessary and wanton pain). An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in

11

a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993) (no Due Process right to be housed in a certain barrack or housing unit or with certain inmates); Bjorlin v. Hubbard, No. CIV S–09–1793, 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same). The deficiencies in this claim cannot be cured by amendment.

### E. Fourteenth Amendment – Due Process – Grievances

Insofar as Plaintiff's Due Process claim is based on the processing and resolution of his appeals/grievances, Plaintiff's complaint fails to state a cognizable claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a have protected liberty interest in the processing of his appeals/grievances, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). These deficiencies cannot be cured by amendment.

### F. Fourteenth Amendment - Equal Protection

To the extent Plaintiff is pursuing an Equal Protection claim based on his status as a mental health patient, Plaintiff's complaint also fails to state a cognizable claim. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601–02 (2008); Village of

Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

Plaintiff has not shown that he was discriminated against because of his membership in any protected class, as "neither prisoners nor mentally ill persons qualify as a protected class for equal protection purposes." Garrett v. Gastello, No. CV 20-4057-PA (JEM), 2020 WL 3963749, at *6 (C.D. Cal. July 13, 2020) (citing City of Cleburne, 473 U.S. at 445-46, and Heller v. Doe by Doe, 509 U.S. 312, 321 (1993)). "The mentally ill are . . . not a suspect class for equal protection purposes." Parrish v. Macomber, No. 2:17-cv-1959 AC P, 2020 WL 3260086, at *2 (E.D. Cal. Apr. 21, 2020), report and recommendation adopted, No. 2:17-cv-01959-TLN-AC, 2020 WL 3254135 (E.D. Cal. June 16, 2020). Nor has Plaintiff shown that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Plaintiff's conclusory statements about discrimination do not suffice. Therefore, he has not stated any claim for a violation of his Fourteenth Amendment rights. Plaintiff has been unable to cure the deficiencies in this claim.

### IV. *Ex Parte* Motion

Plaintiff filed his amended complaint and *ex parte* motion while housed at the California Medical Facility. (ECF No.32 at 27.) By his *ex parte* motion, Plaintiff requests that the Court direct CSP-Corcoran to send his property to him at the California Medical Facility. (Id. at 28.) However, Plaintiff is no longer housed at the California Medical Facility and has returned to CSP-Corcoran, where his property is reportedly located. Accordingly, the Court will recommend that Plaintiff's *ex parte* motion be denied as moot.

### V. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's second amended complaint states the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon, and Sanchez in their individual capacities arising out of the November 9, 2017 assault; (2) retaliation in violation of the First Amendment against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon, Sanchez and Severens in their individual capacities arising out of their attempt to improperly assign Plaintiff

1  outside of his designated EOP mental health level of care unit and place him in an occupied cell
2  after a direction that he receive a single cell placement; and (3) failure to protect from assault by
3  Inmate Hall on November 9, 2017 in violation of the Eighth Amendment against Defendants
4  Hicks, Amaya, Alcantar, MycIntyre, Baylon and Sanchez in their individual capacities.  Plaintiff
5  fails to state any other cognizable claims.  Despite being provided with the relevant pleading and
6  legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to
7  amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

8  Accordingly, IT IS HEREBY RECOMMENDED as follows:

9  1.  This action proceed on Plaintiff's second amended complaint, filed on December 5, 2019, on the following cognizable claims:  (1) retaliation in violation of the First Amendment against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon, and Sanchez in their individual capacities arising out of the November 9, 2017 assault; (2) retaliation in violation of the First Amendment against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon, Sanchez and Severens in their individual capacities arising out of their attempt to improperly assign Plaintiff outside of his designated EOP mental health level of care unit and place him in an occupied cell after a direction that he receive a single cell placement; and (3) failure to protect from assault by Inmate Hall on November 9, 2017 in violation of the Eighth Amendment against Defendants Hicks, Amaya, Alcantar, MycIntyre, Baylon and Sanchez in their individual capacities;

19  2.  All other claims be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted; and

21  3.  Plaintiff's *ex parte* motion for relief be denied as moot.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the

///

///

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 6, 2020**              /s/ Barbara A. McAuliffe            
                                UNITED STATES MAGISTRATE JUDGE