1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

| ANTOINE L. ARDDS, | Case No.  1:18-cv-01324-JLT-BAM (PC) |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| v. | |
| HICKS, *et al.*, | |
| Defendants. | (ECF No. 69) |
| | **FOURTEEN (14) DAY DEADLINE** |

18

### FINDINGS AND RECOMMENDATIONS

19

**I.     Background**

20

Plaintiff Antoine L. Ardds ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

21

*pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on

22

Plaintiff's second amended complaint against: (1) Defendants Hicks, Alcantar, McIntyre, Baylon,

23

and Sanchez for retaliation in violation of the First Amendment arising out of the alleged

24

November 9, 2017 assault; (2) Defendants Hicks, Amaya, Alcantar, McIntyre, Baylon, Sanchez,

25

and Severns[1] for retaliation in violation of the First Amendment arising out of their alleged

26

attempt to improperly assign Plaintiff outside of his designated EOP mental health level of care

27

unit and place him in an occupied cell after a direction that he receive a single cell placement; and

28

[1] Erroneously sued as "Severens."

1

(3) Defendants Hicks, Amaya, Alcantar, McIntyre, Baylon, and Sanchez for failure to protect Plaintiff from an alleged assault by Inmate Hall on November 9, 2017, in violation of the Eighth Amendment.

On June 25, 2021, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust administrative remedies related to the claims asserted in this action as required by the Prisoner Litigation Reform Act.[2]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 69.) Following the Court's order to show cause, Plaintiff filed an opposition on August 9, 2021.  (ECF Nos. 71, 72.)  Defendants filed their reply on August 16, 2021.  (ECF No. 73.)

The motion for summary judgment is deemed submitted.  Local Rule 230(l).

## II.     Legal Standards

### A.      Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  *Id.*

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 69-1.)

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

### B.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f

1    material facts are disputed, summary judgment should be denied, and the district judge rather than

2    a jury should determine the facts." *Id.*

3    **III.    Discussion**

4        **A.    Summary of CDCR's Administrative Review Process**

5            At the relevant time, "[t]he California prison grievance system ha[d] three levels of

6    review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes*

7    *v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed

8    June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)).  *See also* Cal. Code Regs.

9    tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the

10   California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by

11   a designated representative under the supervision of the third level Appeals Chief or equivalent.

12   The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

13           Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or

14   omission by the department or its staff that the inmate . . . can demonstrate as having a material

15   adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

16           The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at

17   § 3084.2(a).  In the appeal form, prisoners must list all staff members involved and describe their

18   involvement in the issue.  *Id.* at § 3084.2(a)(3).  If the inmate does not have the requested

19   identifying information about the staff member, he must provide any other available information

20   that would assist the appeals coordinator in making a reasonable attempt to identify the staff

21   member in question.  *Id.*

22       **B.    Relevant Allegations in Second Amended Complaint**

23           Plaintiff is currently housed at California State Prison, Los Angeles County, in Lancaster,

24   California.  The events in the second amended complaint are alleged to have occurred while

25   Plaintiff was housed at California State Prison, Corcoran ("CSP-Corcoran") in Corcoran,

26   California.  Plaintiff brings this action for damages and injunctive relief against the following

27   defendants: (1) Correctional Counselor II D. Sanchez; (2) Officer D. Hicks; (3) Officer A.

28   Baylon; (4) Officer J. Alcantar; (5) Officer J. McIntyre; (6) Lieutenant J. Amaya; and

4

(7) Correctional Licensed Social Worker R. Severns.

In October 2017, Plaintiff was rehoused in CSP-Corcoran's 3B-Facility. Plaintiff alleges that he became a target of reprisals because of his participation in several staff complaints and in litigation against officials of the California Department of Corrections and Rehabilitation ("CDCR"). He was continuously scheduled for RVRs and appeal grievance interviews with prior institutions. Plaintiff believes that e-mails and phone calls to Defendants Hicks, Sanchez, and Amaya prompted them to flag Plaintiff as an inmate who likes to write up and sue staff. Plaintiff also believes that this prompted their sudden harassment, intimidation, threats and use of other persons as an instrument of attacks and assaults. Plaintiff contends that this led to the November 9, 2017 vicious assault by Plaintiff's cellmate, who struck Plaintiff in the face, causing severe injuries to his right eye, nose and lips after being hit from behind with a state cup. Plaintiff further believes that this information prompted Defendants Hicks and Amaya to instigate other inmates by starting rumors regarding Plaintiff's commitment offence with the office porters. Plaintiff asserts that these defendants were aware that such an act would more than likely incite other prisoners to attack and assault Plaintiff, which occurred on November 9, when he was attacked and assaulted by his cellmate.

On or about October 30, 2017, Defendants Hicks and Amaya informed Defendants Alcantar and MycIntyre that Plaintiff liked to sue and write up officers and to check out his c-file. This allegedly prompted Defendants Alcantar and MycIntyre to display Plaintiff's confidential, privileged information to the unit porters from the unit computer. Plaintiff claims this was done to incite other prisoners to attack and assault Plaintiff because defendants intended to punish him for his crime and silence his complaints against CDCR officials.

On October 31, 2017, Defendants Hicks and Amaya were designated for housing and cell assignment on CSP-Corcoran's 3B-Facility. Defendants were aware of the substantial risk of harm posed to Plaintiff by assigning a prior assaultive inmate into his cell. Defendants Hicks and Amaya informed Defendants Alcantar and MycIntyre that they were reassigning Inmate T. Hall to Plaintiff's cell even though they were aware of 15 unoccupied cells in 3B02.

///

On October 31, 2017, Plaintiff was informed by Defendants Alcantar and MycIntyre to expect a cellmate soon.  Plaintiff informed Defendants Alcantar and MycIntyre that a cellmate would pose a threat to Plaintiff's safety, displaying his CDCR documents, appeals and court documents of complaints against staged assaults.  Defendants stated that Plaintiff could either accept his cellmate or be written up and still forced to accept his cellmate.  Plaintiff continued to address the matter, but he was told to take it up with his cellmate when he arrived.

Defendant Baylon escorted Inmate Hall into Plaintiff's cell.  Defendant Baylon reportedly instigated this inmate to assault Plaintiff by releasing Plaintiff's confidential privileged information to him during their walk over to the unit.

On November 2, 2017, Defendants Severens and Sanchez were informed by Plaintiff of his fears of being set up by CSP-Corcoran-3B officials for being an active participant in several civil actions against CDCR officials.  Between October 2017 and November 9, 2017, Plaintiff made several requests to each defendant for a single cell placement due to his history of CDCR officials staging in cell assaults by cellmates.  Defendant Sanchez acknowledged her awareness of such a threat posed to Plaintiff in his U.C.C. hearing and in his CDCR 128(b) chrono dated November 2, 2017.  Despite this knowledge, Defendant Sanchez ignored the risk factors and failed to intervene to safeguard Plaintiff.

Plaintiff claims that due to the deliberate indifference of Defendants Severens and Sanchez, Plaintiff was assaulted by his cellmate, Inmate T. Hall, on November 9, 2017.  Plaintiff sustained severe facial injuries from being struck from behind with a plastic cup.  Inmate Hall had a previous, similar attack on another inmate using a plastic cup.

Plaintiff alleges that Defendants Sanchez, Severens, Hicks, Alcantar, MycIntyre, Amaya and Baylon were aware of Inmate Hall's previous similar assaults on cellmates with state cups.  Plaintiff asserts that Defendant Hicks and Amaya were in charge of inmate housing assignments and intentionally placed Inmate Hall in Plaintiff's cell in retaliation for maintaining litigation against several CDCR officials and Plaintiff's commitment offense.

Plaintiff alleges that on January 19, 2016, the CDCR Director and Secretary sent a memorandum to all CDCR Wardens and Associate Directors addressing inmate housing

6

assignment considerations during the screening and housing process.  On or about October 2017 through November 9, 2017, Plaintiff supplied each defendant with a copy of this memorandum to reiterate their obligations to consider the vulnerabilities of inmates with mental and medical health conditions or severe developmental disabilities when determining whether to grant single cell status under the Departmental Operational Manual.

Plaintiff contends that he had demonstrated on several occasions through departmental evidence that he fit each set of criteria in the January 19, 2016 memorandum.  Plaintiff claims that each of these factors was intentionally ignored by Defendants Hicks, Alcantar, Sanchez, Severens, Amaya, Baylon and MycIntyre due to their feelings about his commitment offense and his participation in civil suits and staff complaints against CDCR officials.  Plaintiff further alleges that defendants ignored the length of his sentence, his enemies and victimization history, his vulnerability due to medical or mental health and disabilities, history of in-cell assaults and/or violence, nature of commitment offense, "R" or "S" suffix determination, and designated protective custody.  Plaintiff asserts that due to defendants' failure to comply or implement an assessment of these criteria, he was assaulted with a state plastic cup from behind by Inmate Hall on November 9, 2017.  At the time of the attack, Plaintiff was in the medication line, the attack was unprovoked, and he had never met or had any words with Inmate Hall prior to the cell assignment and November 9 assault.

Plaintiff alleges that on November 9, 2017, at approximately 8:00 p.m., he was assaulted by his cellmate, Inmate T. Hall.  Inmate Hall came behind Plaintiff during medication call and struck him with a state plastic cup several times to his face, causing severe injuries to his right eye, nose and lips, which later required x-rays.  Plaintiff claims that the attack was unprovoked because Inmate Hall was just placed in his cell by Defendants Hicks, Sanchez, Alcantar, MycIntyre and Amaya, who had prior knowledge of Inmate Hall's similar assaults and STG affiliation to the SNY 2-5ers.

Plaintiff claims that on November 9, 2017, Defendants Alcantar and MycIntyre were in position between the medication carts.  Plaintiff asserts that both had a bird's eye view of the incident from beginning to end.

7

As relief, Plaintiff seeks compensatory and punitive damages.

**C.     Undisputed Material Facts (UMF)[3]**

1. Plaintiff has been incarcerated within CDCR since September 13, 1999, and was a prisoner at the time he filed this action.  (Decl. of J. Mendez, ¶ 7; Plaintiff's Complaint, ECF No. 1, Filed September 21, 2018.)

2. Between October 1, 2017, and September 13, 2018, Plaintiff submitted five non-health care inmate appeals that either (a) name or identify correctional officers J. Amaya, J. McIntyre, or mental health staff member R. Severns; (b) allege that Plaintiff was assaulted by inmate T. Hall on November 9, 2017; or (c) allege that Plaintiff was improperly removed from the EOP level of care: Log Nos. CSPC-3-17-06269, CSPC-3-18-00093, CSPC-8-18-03021, CSPC-3-18-04019, and CSPC-3-18-04385.  (Mendez Decl., ¶ 7, Exhibit A (IATS Log), Exhibit B (CSPC-3-17-06269), Exhibit C (CSPC-3-18-00093), Exhibit E (CSPC-8-18-03433), Exhibit K (CSPC-3-18-04019), Exhibit M (CSPC-3-19-04385).)

3. On November 28, 2017, Plaintiff submitted Log No. CSPC-3-17-06269, alleging that his procedural due process rights were violated by staff in connection with a RVR, that he had requested single cell status on November 3, 2017, and that he had been assaulted by his cellmate T. Hall on November 9, 2017.  (Mendez Decl. ¶¶ 7–8, Exhibit A (IATS Log), Exhibit B (CSPC-3-17-06269).)

4. CSPC-3-17-06269 was accepted at the first level of review on December 7, 2017.  (Mendez Decl. ¶ 8, Exhibit A (IATS Log), Exhibit B (CSPC-3-17-06269).)

5. Plaintiff withdrew CSPC-3-17-06269 on January 4, 2018, stating that he was doing so to "better address the issues on a separate appeal in regards to the inmate T. Hall assault and battery upon myself.  I therefore withdraw this appeal."  (*Id.*)

///

---

[3] ECF No. 69-3.  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule 260(a).  As a result, Defendants' Statement of Undisputed Facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's declaration filed in support of his opposition to the motion for summary judgment, which was signed under penalty of perjury.  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

6. On January 4, 2018, CSPC-3-18-00093 was received by the Appeals Office.  In this appeal, Plaintiff alleged that his procedural due process rights were violated with respect to RVR 3701125, that he was assaulted on November 9, 2017, by his cellmate T. Hall, that corroborating testimony was not used with respect to RVR 3701125, and that unidentified Institutional Classification Committee (ICC) and Interdisciplinary Treatment Team (IDTT) staff failed to protect him after he expressed a fear of assault.  (Mendez Decl. ¶ 9, Exhibit A (IATS Log), Exhibit C (CSPC-3-18-00093).)

7. CSPC-3-18-00093 was bypassed at the first level, and accepted at the second level of review on January 4, 2018.  A second-level decision was issued on January 24, 2018, partially granting Plaintiff's appeal and ordering that RVR 3701125 be reissued and reheard.  (Mendez Decl. ¶ 9, Exhibit A (IATS Log), Exhibit C (CSPC-3-18-00093), Exhibit D (Second-level response, with RVR modification order).)

8. CSPC-8-18-03021 was filed on June 8, 2018, alleging that correctional officers D. Hicks, Baylon, Vesques, and Lt. Amaya, attempted to have him stabbed by a cellmate on March 29, 2018.  (Mendez Decl. ¶ 10, Exhibit A (IATS Log), Exhibit F (CSPC-8-18-03021).)

9. CSPC-8-18-03021 was screened at the first level on June 14, 2018, and sent to CSP-Corcoran from California Men's Colony, where Plaintiff was housed when he filed it. The appeal was cancelled at the second level on June 20, 2018, at CSP-Corcoran for being filed outside time constraints.  (Mendez Decl. ¶ 10; Exhibit A (IATS Log), Exhibit F (CSPC-8-18-03021), Exhibit G (First-level screening letter dated June 14, 2018), Exhibit H (Second-level cancellation letter dated June 20, 2018).)

10. On July 12, 2018, CSPC-8-18-03433 was received by the Appeals Office.  In this appeal, Plaintiff alleged that he was appealing the cancellation decision issued in CSPC-8-18-03021.  On July 12, 2018, CSPC-8-18-03433 was rejected at the second level of review as Plaintiff failed to attach necessary supporting documentation.  (Mendez Decl. ¶ 10, Exhibit A (IATS Log), Exhibit E (CSPC-8-18-03433), Exhibit I (Second-level cancellation letter dated July 12, 2018), Exhibit J (Second-level decision for CSPC-8-18-03433, upholding cancellation of CSPC-8-18-03021).)

9

11. On August 9, 2018, CSPC-8-18-03433 was accepted at the second level after Plaintiff attached the required supporting documentation.  On August 22, 2018, CSPC-8-18-03433 was denied at the second level, affirming the cancellation of CSPC-8-18-03021 for failure to file within time constraints.  (Mendez Decl. ¶ 10, Exhibit A (IATS Log), Exhibit E (CSPC-8-18-03433), Exhibit J (Second-level decision for CSPC-8-18-03433, upholding cancellation of CSPC-8-18-03021).)

12. On August 9, 2018, CSPC-3-18-04019 was received by the Appeals Office.  In this appeal, Plaintiff alleged that he was challenging a due process violation in RVR 03701125 because he was unable to present supporting evidence and testimony in his defense.  This appeal was bypassed at the first level and accepted at the second level of review on August 14, 2018.  (Mendez Decl. ¶ 11, Exhibit A (IATS Log), Exhibit K (CSPC-3-18-04019).)

13. CSPC-8-18-04019 was granted in part at the second level on August 30, 2018.  Specifically, the Senior Hearing Officer failed to identify the specific portions of the 837 incident report relied upon in finding Plaintiff guilty of fighting in RVR 03701125.  This RVR was ordered reissued and reheard.  (Mendez Decl. ¶ 11, Exhibit A (IATS Log), Exhibit L (Second-level response, with modification order and RVR action).)

14. On June 29, 2019, Plaintiff submitted Log No. CSPC-3-19-04385, alleging assault and battery by Correctional Officer D. Hicks, on June 27, 2019.  The first level of review was bypassed, and Plaintiff's grievance was processed at the second level of review as a staff complaint on July 9, 2019.  An initial decision denying the appeal at the second level, and determining that staff did not violate policy, was issued on August 16, 2019.  (Mendez Decl. ¶ 12, Exhibit A (IATS Log), Exhibit M (CSPC-3-19-04385), Exhibit N (Second-level response).)

15. An amended second-level response from the Institutional Executive Review Committee (IERC) was issued to Plaintiff in CSPC-3-19-04385 on January 17, 2020.  (Mendez Decl. ¶ 12, Exhibit A (IATS Log), Exhibit O (Amended second-level response from the IERC).)

///

16. As of June 16, 2021, Plaintiff appealed one healthcare grievance to the CCHCS Headquarters level of review that either (a) identified mental health staff member R. Severns; (b) contained allegations regarding removal from the EOP level of care on or around March 23, 2018; (c) alleged that healthcare staff retaliated against Plaintiff by removing him from the EOP level of care; or (d) identified custody staff J. Amaya, A. Baylon, D. Sanchez, D. Hicks, J. Alcantar, or J. McIntyre: healthcare grievance log no. COR-HC-18000745.  (Decl. of R. Hart ¶¶ 9–10, Exhibit A (HCARTS Log), Exhibit B (COR-HC-18000745).)

17. COR-HC-18000745 was received at the institutional level on March 27, 2018.  In that grievance, Plaintiff alleged that R. Severns had continued to threaten to remove him from the EOP level of care, that mental health patients had inadequate living conditions, and that he needed protection from reprisals for speaking out against inadequate treatment. An institutional-level decision was issued on or about April 27, 2018, informing Plaintiff that he was appropriately at the CCCMS level of care and that the IDTT would continue to monitor his mental healthcare and treatment.  (Hart Decl. ¶ 10, Exhibit A (HCARTS Log), Exhibit B (COR-HC-18000745), Exhibit C (Institutional-level decision to COR-HC-18000745).)

18. An appeal of the institutional-level decision in COR-HC-18000745 was received at the Headquarters level on August 29, 2018.  In this appeal, Plaintiff included new allegations, including that on March 29, 2018,[4] he was retaliated against by correctional staff Baylon, Alcantar, D. Hicks, and Lt. Amaya for reporting constitutional violations because they forced him to cell with another inmate who produced razor blades in their cell.  Plaintiff also alleged he had been denied the full benefits of qualified mental health treatment. (Hart Decl. ¶ 12, Exhibit A (HCARTS Log), Exhibit B (COR-HC-18000745), Exhibit C (Institutional-level decision to COR-HC-18000745), Exhibit D (Appeal of institutional-level decision in COR-HC-18000745).)

---

[4] The appeal states that the retaliation occurred on March 29, 2017.  (ECF No. 69-4, p. 20.)  However, it appears this is a clerical error and Plaintiff intended to write March 29, 2018.

19. A Headquarters-level decision was issued on or about November 26, 2018, informing Plaintiff that his mental health condition would continue to be monitored by the IDTT, that individual treatment plans include patient involvement, but do not require unanimity between patients and providers, and that Plaintiff should speak with his health care providers to communicate his concerns.  Healthcare grievances shall not be submitted regarding issues outside of healthcare jurisdiction, and allegations of staff misconduct associated with healthcare grievances are specific to healthcare staff or behavior that violates law, regulation, policy, procedure, or is contrary to an ethical or professional standard.  (Hart Decl. ¶ 13, Exhibit A (HCARTS Log), Exhibit E (Headquarters-level decision in COR-HC-18000745).)

20. As of October 1, 2017, Plaintiff has filed two appeals to the Office of Appeals for review at the third level that either (a) name or identify correctional officers J. Amaya, A. Baylon, D. Sanchez, D. Hicks, J. Alcantar, J. McIntyre, or mental health staff member R. Severns; (b) allege that Plaintiff was assaulted by inmate T. Hall on November 9, 2017; or (c) allege that Plaintiff was improperly removed from the EOP level of care: appeal log numbers COR-18-00093 (IAB 1802468) and COR-19-04385 (IAB 2001522).  (Decl. of H. Mosely, ¶¶ 6–8, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit B (OOA IATS Log after June 1, 2020), Exhibit C (CSPC-3-18-00093/TLR 1802468), Exhibit I (CSPC-3-19-04385 third-level response).)

21. Plaintiff appealed Log No. CSPC-3-18-00093 (COR-18-00093/TLR 1802468) to the Office of Appeals for review at the third and final level on March 12, 2018.  Plaintiff's appeal was rejected on April 27, 2018, for being illegible.  (Mosely Decl. ¶¶ 9–10, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit C (CSPC-3-18-00093/TLR 1802468), Exhibit D (Rejection letter dated April 27, 2018).)

22. Plaintiff resubmitted an appeal of CSPC-3-18-00093 to the Office of Appeals on July 10, 2018.  This appeal was cancelled on September 5, 2018, as Plaintiff failed to resubmit his appeal within the required time constraints.  (Mosely Decl. ¶ 10, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit C (CSPC-3-18-00093/TLR 1802458), Exhibit D

(Rejection letter dated April 27, 2018), Exhibit E (Cancellation letter dated September 5, 2018).)

23. Plaintiff resubmitted an appeal of CSPC-3-18-00093 to the Office of Appeals on July 24, 2018.  This appeal was cancelled on September 12, 2018, as Plaintiff's appeal had been resolved at the second level when his RVR was ordered to be reissued and reheard. (Mosely Decl. ¶ 10, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit C (CSPC-3-18-00093/TLR 1802468), Exhibit F (Cancellation letter dated September 12, 2018).)

24. Plaintiff resubmitted an appeal of CSPC-3-18-00093 to the Office of Appeals on August 1, 2018.  This appeal was cancelled on September 21, 2018, as Plaintiff's appeal had been resolved at the second level when his RVR was ordered to be reissued and reheard. (Mosely Decl. ¶ 10, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit C (CSPC-3-18-00093/TLR 1802468), Exhibit G (Cancellation letter dated September 21, 2018).)

25. Plaintiff appealed Log No. CSPC-3-19-04385 (COR-19-04385/TLR 2001522) to the Office of Appeals for review at the third and final level on February 10, 2020.  (Mosely Decl. ¶ 11, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit H (CSPC-3-19-04385/TLR 2001522 third-level appeal).)

26. Plaintiff's appeal of CSPC-3-19-04385 was denied at the third and final level of review on April 29, 2020.  (Mosely Decl. ¶ 11, Exhibit A (OOA IATS Log before June 1, 2020), Exhibit I (CSPC-3-19-04385/TLR 2001522 third-level response).)

**D.     Discussion**

1.     Parties' Positions

Defendants argue that Plaintiff initiated this lawsuit before obtaining a decision at the third and final level of review for any of the appeals relating to the specific claims at issue in this case, namely CSPC-8-18-03021 and COR-HC-18000745.  While Plaintiff submitted several other appeals that referred to the alleged assault on Plaintiff by inmate Hall, they did not identify any of the defendants in this action, and alleged only due process violations during Plaintiff's rules violation hearings.  Of the relevant appeals, Defendants argue that CSPC-8-18-03021 was cancelled as untimely, and though Plaintiff appealed the cancellation in CSPC-8-18-03433, the

13

1   appeal of the cancellation was not submitted to the third and final level of review.  Therefore,

2   Defendants contend that Plaintiff never submitted CSPC-8-18-03021 or CSPC-8-18-03433 to the

3   Office of Appeals for review at the third and final level prior to Plaintiff filing this action.

4   Finally, while Plaintiff received a decision at the Headquarters level of review for COR-HC-

5   18000745, that decision was not issued until over two months after Plaintiff filed the instant

6   action, and also included issues outside the healthcare jurisdiction.

7          Plaintiff argues in opposition that during the course of litigating this civil suit and other

8   similar lawsuits against Defendants, Defendant Hicks intentionally destroyed several legal

9   materials pertaining to the civil suits, resulting in interference with Plaintiff's ability to file and

10  prosecute several actions before this Court and a violation of Plaintiff's First Amendment rights,

11  particularly as a member of the *Coleman* and *Armstrong* protected class.  Further, Plaintiff argues

12  that administrative remedies became unavailable by Defendants' or their agents' "acts of

13  intimidation, assaults, threats, or obstruct of access to court, by way of intentional destruction of

14  legal materials protaining to the active cases pending against defendants or their Subordinate

15  Employees and/or Supervisors."  (ECF No. 72, p. 4 (unedited text).)  Plaintiff contends that he

16  made every necessary effort to exhaust his remedies until such remedies became unavailable,

17  specifically arguing that he withdrew his appeal in CSPC 3-17-06269 because Defendant Sanchez

18  was the chairperson in Plaintiff's classification hearing on November 2, 2017, and it was a

19  conflict of interest for her to be a reviewer in addressing staff misconduct complaints against her.

20  (*Id.* at 5.)  Plaintiff argues that this practice was authorized by the Hiring Authority, and directed

21  Plaintiff to essentially withdraw or give up the appeal and start over, (*id.*), and that Defendant

22  Sanchez's threats of reprisal were intended to intimidate him and force him to withdraw the

23  grievance, (*id.* at 17).  Plaintiff further asserts that his Due Process rights were violated in

24  connection with RVR Log No. 3701125, which was eventually reissued and reheard following

25  Plaintiff's appeal of the original finding of guilt.  Plaintiff also contends that there was a failure to

26  process his appeal CSPC-3-18-00093, and as soon as CSPC officials received his complaint, he

27  began to receive excessive retaliatory actions against him from defendants.  (*Id.* at 8.)  The

28  remainder of Plaintiff's opposition and declaration in support contain allegations and arguments

14

1  regarding the merits of Plaintiff's claims, and do not address the issue of exhaustion of

2  administrative remedies.

3      In reply, Defendants reiterate the argument that Plaintiff did not obtain a final-level

4  decision for most of his grievances, or he filed this lawsuit only after obtaining final-level

5  decisions on others.  Further, Plaintiff did not identify any of the Defendants by name in CSPC-3-

6  17-06269, CSPC-3-18-00093, or CSPC-3-18-04019.  Finally, Defendants contend that Plaintiff

7  has not provided sufficient evidence to create a material issue of fact that Plaintiff was thwarted

8  in his attempt to exhaust administrative remedies, and has not established that he exhausted

9  available administrative remedies or is excused from doing so.

10      2.  Analysis

11      All of the claims at issue in this suit arose before the filing of the original complaint, and

12  all were alleged in the original complaint.  Therefore, all were required to be exhausted prior to

13  Plaintiff initiating this action on September 21, 2018.

14      With respect to Plaintiff's argument that Defendants have destroyed certain legal materials

15  or otherwise attempted to thwart his efforts to exhaust his administrative remedies, the Court does

16  not find these assertions credible.  Plaintiff has not provided any details as to which legal

17  materials were destroyed, how they related to his efforts to exhaust, or otherwise explain how

18  Defendants prevented him from exhausting his administrative remedies.  Plaintiff has failed to

19  present more than his own conclusory allegations, unsupported by evidence in the record.  *See*

20  *Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported

21  by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104

22  F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving

23  affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine

24  issue of material fact.").

25      The Court therefore turns to the appeals Plaintiff submitted.  There is no dispute that

26  Plaintiff filed five non-healthcare inmate appeals that either: (a) name or identify correctional

27  officers Amaya, McIntyre, or mental health staff member Severns; (b) allege that Plaintiff was

28  assaulted by Inmate Hall on November 9, 2017; or (c) allege that Plaintiff was improperly

15

removed from the EOP level of care: Log Nos. CSPC-3-17-06269, CSPC-3-18-00093, CSPC-8-18-03021, CSPC-3-18-04019, and CSPC-3-18-04385. (UMF 2.) Plaintiff also appealed one healthcare grievance to the CCHCS Headquarters level of review that either: (a) identified mental health staff member Severns; (b) contained allegations regarding removal from the EOP level of care on or around March 23, 2018; (c) alleged that healthcare staff retaliated against Plaintiff by removing him from the EOP level of care; or (d) identified custody staff Amaya, Baylon, Sanchez, Hicks, Alcantar, or McIntyre: Log No. COR-HC-18000745. (UMF 16.)

As discussed below, the Court finds that Plaintiff fully exhausted his administrative remedies with respect to his failure to protect claim against Defendants Hicks, Amaya, Alcantar, McIntyre, Baylon, and Sanchez. However, the Court finds that Plaintiff failed to exhaust his administrative remedies, prior to filing the instant action, with respect to his retaliation claims.

a.  CSPC-3-17-06269

Plaintiff submitted CSPC-3-17-06269 on November 28, 2017, alleging that his procedural due process rights were violated by staff in connection with a RVR, that he had requested single cell status on November 3, 2017, and that he had been assaulted by Inmate Hall on November 9, 2017. (UMF 3.) Plaintiff withdrew CSPC-3-17-06269 on January 4, 2018, stating that he was doing so to "better address the issues on a separate appeal in regards to the inmate T. Hall assault and battery upon myself. I therefore withdraw this appeal." (UMF 5.)

Plaintiff contends in his opposition that he withdrew this appeal because he informed Defendant Sanchez that it was a conflict of interest for her to be reviewing him when she was the subject of his complaint regarding his single cell placement request, and Plaintiff was threatened with reprisal. (ECF No. 72, p. 17.) Plaintiff contends that this was intended to intimidate him and force him to withdraw the grievance, and upon being forced to withdraw his appeal, Plaintiff stated that he would better address the issues about the November 9, 2017 incident in another appeal. (*Id.*) Plaintiff ultimately did submit a new appeal, CSPC-3-18-00093, on the same day he withdrew CSPC-3-17-06269. (UMF 5, 6.)

///

///

16

Plaintiff presents only conclusory allegations regarding Defendant Sanchez's intention to intimidate him into withdrawing his appeal, which are not signed under penalty of perjury.[5] Thus, there is no evidence before the Court, aside from Plaintiff's own allegations, that Defendant Sanchez intimidated him into withdrawing his appeal, and that Plaintiff withdrew his appeal due to that intimidation.  The only evidence before the Court indicates that Plaintiff withdrew his appeal in order to address the issues in another appeal.  (UMF 5.)  Finally, there is evidence to support the conclusion that Plaintiff did not feel threatened or unable to utilize the grievance process, as he went on to submit a new appeal regarding the same issues on the same day he withdrew the prior grievance.  (UMF 6.)  CSPC-3-17-06269 therefore did not exhaust Plaintiff's administrative remedies for any claims in this action.

b.  CSPC-3-18-00093

Plaintiff submitted CSPC-3-18-00093 on January 4, 2018, alleging that his procedural due process rights were violated with respect to RVR 3701125, that he was assaulted on November 9, 2017, by his cellmate T. Hall, that corroborating testimony was not used with respect to RVR 3701125, and that unidentified Institutional Classification Committee (ICC) and Interdisciplinary Treatment Team (IDTT) staff failed to protect him after he expressed a fear of assault.  (UMF 6.) CSPC-3-18-00093 was bypassed at the first level and accepted at the second level, and a second-level decision was issued on January 24, 2018, partially granting Plaintiff's appeal and ordering that RVR 3701125 be reissued and reheard.  (UMF 7.)

Defendants contend that CSPC-3-18-00093 mentions the alleged assault on Plaintiff by Inmate Hall, but does not identify any of the Defendants in this action, and while alluding to a failure to protect, instead the appeal alleged due process violations during Plaintiff's RVR hearings.  (ECF No. 69-2, p. 11.)  This assertion is belied by Defendants' own Undisputed Material Facts setting forth exactly what Plaintiff alleged in the appeal, (ECF No. 69-3, ¶ 6;[6]

---

[5] The Court notes that while Plaintiff's declaration in support of his opposition is signed under penalty of perjury, his opposition is not, and therefore cannot be considered as evidence.  *See Johnson*, 134 F.3d at 1399–1400.  Nowhere in Plaintiff's declaration in support of his opposition does he raise any allegations regarding his motivations for withdrawing CSPC-3-17-06269.

[6] ECF No. 69-3, ¶ 6 states, "On January 4, 2018, CSPC-3-18-00093 was received by the Appeals Office. In this appeal, Plaintiff alleged that his procedural due process rights were violated with respect to RVR 3701125, that he was assaulted on November 9, 2017, by his cellmate T. Hall, that corroborating testimony was not used with respect

UMF 6), as well as the appeal itself, (ECF No. 69-5, pp. 24–27).  Specifically, in CSPC-3-18-

00093 section A, Plaintiff explains his issue as follows:

> Due to the Policies, Practices, Acts and/or Omissions of supervisory officials
> either by their conduct of allowing their subordinate personnels to continue to
> violate Procedural Due Process rights or to be free from Cruel and Unusual
> Punishment, this is filed because of the violation of officials not following
> policies or procedures of DOMS 54090.43 wherefore they have willfully delayed
> and obstructed Applicant's attempts at Resolving his disciplinary investigations
> and have the corroborated witnesses testimony use to assist him in his defense. On
> November 9, 2017, at approximately 2:00 pm I was assaulted by my then cell
> mate T. Hall from behind with a state issued cup, while I was in the med-line.
> This incident and my testimony was recorroborated by other inmate witnesses and
> staff testimony at my disciplinary hearing on [blank] even though inmate witness,
> and some staff statements of the incident corroborates Applicants', it was not used
> and I was found guilty of fighting when I was actually assaulted.

(ECF No. 69-5, pp. 24, 26.)  Plaintiff goes on in Section B to request the following action:

> 1) Declare that even upon given notice of fear of such assaults, that both ICC and
> IDTT members violated Applicant's Eighth Amendment rights when they failed
> to protect him from known risk of assault and he was severely assaulted as a
> result of such failure. (2) Declare that ICC members and IDTT members breach a
> duty of reasonable care to protect him from assaults by other prisoners.  Each has
> breached such duty by failing to provide protection when Applicant informed
> them of his fear on November 2nd and November 3, 2017 of being assaulted and
> showed supporting document supporting his fear.  (3) Request for compensation
> for Damages and opportunity to Exhaust All Available Administrative Remedies.

(*Id.*)

The Court finds that CSPC-3-18-00093 does more than "allude to" Plaintiff's failure to

protect claim.  Plaintiff specifically identifies "ICC members and IDTT members" as violating his

Eighth Amendment rights when they failed to protect him from a risk of assault after he informed

them on November 2, 2017 and November 3, 2017 that he feared such an assault.  (*Id.*)  Under the

PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is

sought."  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d

1117, 1120 (9th Cir. 2009)).  Plaintiff's grievance, which was not required to include any legal

terminology or legal theories, could not have been more clear in alerting prison officials to the

---

to RVR 3701125, and that unidentified Institutional Classification Committee (ICC) and Interdisciplinary Treatment
Team (IDTT) staff failed to protect him after he expressed a fear of assault."

1   problem.  *See Griffin*, 557 F.3d at 1120.

2   The Court is also unpersuaded by Defendants' argument that CSPC-3-18-00093 did not

3   exhaust Plaintiff's administrative remedies because it failed to identify any of the Defendants by

4   name.  While Defendant is correct that California regulations require that an inmate "list all staff

5   member(s) involved" in a grievance, the regulations further provide that if the inmate does not

6   have such information as the staff member's name or other information, "he or she shall provide

7   any other available information that would assist the appeals coordinator in making a reasonable

8   attempt to identify the staff member(s) in question."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).

9   Plaintiff identified the ICC and IDTT committee members on the dates of November 2, 2017 and

10   November 3, 2017.  This information plainly put prison officials on notice that the members of

11   those committees were involved, and prison officials had the opportunity to resolve the issue of

12   Plaintiff's failure to protect claim.  *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) ("The

13   grievance process is only required to alert prison officials to a problem, not to provide personal

14   notice to a particular official that he may be sued." (citation and internal quotation marks

15   omitted)).

16   The Court notes, however, that neither Defendants nor Plaintiff have provided any

17   evidence clarifying which of the named Defendants were members of the ICC and/or IDTT

18   committees in question.  In light of this lack of evidence, the Court finds that the undisputed

19   evidence viewed in the light most favorable to Plaintiff shows that Plaintiff exhausted his

20   administrative remedies as to his failure to protect claim against any Defendants who may have

21   been members of the ICC and IDTT committees on November 2, 2017 or November 3, 2017.  *See*

22   *Albino*, 747 F.3d at 1166.  To the extent that any of the remaining Defendants were not members

23   of those committees on the dates in question, the parties will have the opportunity to present

24   further evidence of that fact in a later motion for summary judgment.

25   Finally, the Court finds that CSPC-3-18-00093 was fully exhausted through all required

26   levels.  Although the second-level decision issued on January 24, 2018 addressed only the due

27   process claim, as discussed above, Plaintiff clearly presented his failure to protect claim to prison

28   officials and provided an opportunity for them to address the issue.  Prison officials failed to do

1   so, and when Plaintiff attempted to appeal the second-level decision, Plaintiff's appeals were

2   repeatedly cancelled, and he was informed that his appeal had been resolved at the second level

3   when his RVR was ordered to be reissued and reheard.  (UMF 23, 24); *see also Harvey v. Jordan*,

4   605 F.3d 681, 686 (9th Cir. 2010) (administrative process exhausted when prison officials

5   purported to grant relief that resolved grievance to plaintiff's satisfaction).

c.   CSPC-8-18-03021

7   Plaintiff submitted CSPC-8-18-03021 on June 8, 2018, alleging that correctional officers

8   Hicks, Baylon, Vesques, and Lt. Amaya attempted to have Plaintiff stabbed by a cellmate on

9   March 29, 2018.  (UMF 8.)  Specifically, Plaintiff alleges in the grievance that although his

10  doctor requested that Plaintiff be placed on single cell status due to Plaintiff's suicidal ideations,

11  officers placed Plaintiff in a cell with another inmate in retaliation for bringing to the attention of

12  OIA the assault and battery or possible death of Inmate D. Cole on February 17, 2018.  (ECF No.

13  69-5, pp. 56, 58.)  The Court finds that this grievance put prison officials on notice of Plaintiff's

14  retaliation claim arising out of Defendants' attempts to improperly assign Plaintiff outside of his

15  designated EOP mental health level of care unit and place him in an occupied cell after a direction

16  that he receive a single cell placement.  (*See* ECF No. 37, pp. 8, 11; ECF No. 39.)

17  However, CSPC-8-18-03021 did not fully exhaust Plaintiff's administrative remedies, as

18  it was cancelled at the second level as untimely.  (UMF 9.)  Although Plaintiff submitted CSPC-

19  8-18-03433 to appeal the cancellation of CSPC-8-18-03021, CSPC-8-18-03433 was denied at the

20  second level, affirming the cancellation of CSPC-8-18-03021 as untimely.  (UMF 11.)  Plaintiff

21  did not submit a third level appeal for either CSPC-8-18-03021 or CSPC-8-18-03433.  (*See* UMF

22  20.)

d.   CSPC-3-18-04019

24  Plaintiff submitted CSPC-3-18-04019 to the Appeals Office on August 9, 2018, alleging

25  due process violations in RVR 03701125.  (UMF 12.)  The Court finds that this grievance only

26  served to put prison officials on notice that Plaintiff had a due process complaint, as it does not

27  reference any of the failure to protect or retaliation claims at issue in this action.  (*See* ECF No.

28  69-5, pp. 67, 69.)  Although Plaintiff mentions Defendants Alcantar and McIntyre in the

20

grievance, Plaintiff states only that their statements could have been offered during Plaintiff's RVR hearing to show "their awareness of inmate usage of a state cup in his attack on [Plaintiff] on November 9, 2017." (*Id.* at 69.)

e. CSPC-3-19-04385

Plaintiff submitted CSPC-3-19-04385 on June 29, 2019, alleging assault and battery by Defendant Hicks on June 27, 2019. (UMF 14.) Plaintiff alleges that during a mandated search, Defendant Hicks cut into Plaintiff's right wrist with wire cutters, attempting to cut Plaintiff's vein in an effort to silence Plaintiff's complaints. (ECF No. 69-5, pp. 91, 93.) Plaintiff further alleges that this assault was done in retaliation for Plaintiff's participation in civil litigation and submission of several staff misconduct grievances. (*Id.* at 93.)

Although Plaintiff is proceeding in this action against Defendant Hicks on two retaliation claims, those claims relate to the November 9, 2017 assault by Inmate Hall and the attempt to improperly assign Plaintiff outside of his designated EOP mental health level of care single cell placement and into an occupied cell. This action is not proceeding on any claims against Defendant Hicks for retaliation related to an assault and battery on June 27, 2019.

Finally, even assuming that CSPC-3-19-04385 placed prison officials on notice of the specific retaliation claims at issue in this action, Plaintiff did not receive a third-level decision on CSPC-3-19-04385 until April 29, 2020, nearly two years after the complaint was filed in this action. (UMF 26.) Therefore, CSPC-3-19-04385 did not fully exhaust any of the claims raised in the instant action.

f. COR-HC-18000745

Finally, Plaintiff submitted COR-HC-18000745 at the institutional level on March 27, 2018, alleging that Defendant Severns had continued to threaten to remove him from the EOP level of care, that mental health patients had inadequate living conditions, and that he needed protection from reprisals for speaking out against inadequate treatment. (UMF 17.) After he received the institution-level decision, Plaintiff filed an appeal to the Headquarters level on August 29, 2018. (UMF 18.) Plaintiff included additional allegations stating that on March 29, 2018, Plaintiff was retaliated against by Defendants Baylon, Alcantar, Hicks, and Amaya for

21

1  reporting constitutional violations when they forced Plaintiff to cell with another inmate who

2  produced razor blades in their cell.  (*Id.*)

3  Even assuming that COR-HC-1800745 properly put prison officials on notice of

4  Plaintiff's retaliation concerns with respect to Defendant Severns—as well as Defendants Baylon,

5  Alcantar, Hicks, and Amaya—this appeal did not properly exhaust Plaintiff's retaliation claims

6  with respect to these defendants.  Plaintiff did not receive a final Headquarters-level decision on

7  COR-HC-1800745 until November 26, 2018, two months after the filing of the complaint in this

8  action.  (UMF 19.)  Thus, Plaintiff failed to exhaust his administrative remedies with respect to

9  these retaliation claims, prior to filing this action, and Plaintiff has not provided any evidence to

10  excuse him from this failure to exhaust.

11  **IV.    Recommendation**

12  Based on the foregoing, IT IS HEREBY RECOMMENDED that:

13  1.  Defendants' motion for summary judgment for failure to exhaust, (ECF No. 69), be

14      GRANTED IN PART and DENIED IN PART;

15  2.  Plaintiff's First Amendment retaliation claim against Defendants Hicks, Alcantar,

16      McIntyre, Baylon, and Sanchez arising out of the alleged November 9, 2017 assault be

17      DISMISSED, without prejudice, for the failure to exhaust administrative remedies;

18  3.  Plaintiff's First Amendment retaliation claim against Defendants Hicks, Amaya, Alcantar,

19      McIntyre, Baylon, Sanchez, and Severns arising out of their alleged attempt to improperly

20      assign Plaintiff outside of his designated EOP mental health level of care unit and place

21      him in an occupied cell after a direction that he receive a single cell placement be

22      DISMISSED, without prejudice, for the failure to exhaust administrative remedies;

23  4.  Defendant Severns be DISMISSED from this action; and

24  5.  This action proceed on Plaintiff's second amended complaint against Defendants Hicks,

25      Amaya, Alcantar, McIntyre, Baylon, and Sanchez for failure to protect Plaintiff from an

26      alleged assault by Inmate Hall on November 9, 2017, in violation of the Eighth

27      Amendment.

28

* * *

22

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 18, 2022**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE